## SUPREME COURT.

MARTHA ERNST, executrix, &c. agt. THE HUDSON RIVER RAILROAD COMPANY.

Where, in an action for *causing death*, it did not appear whether the judge at the circuit *non-suited* the plaintiff, on the ground that the *negligence* of the deceased contributed to produce the injury complained of, or upon the ground that the defendants were *not guilty of negligence*, or both,

*Held*, that the evidence in the case was not so clear on either of these grounds, that a verdict for the plaintiff would have been set aside as unwarranted by the evidence, a new trial therefore granted. (GOULD, J., *dissenting*.)

*Albany General Term, March*, 1860.

GOULD, HOGEBOOM and PECKHAM, *Justices*.

THIS is a motion for a new trial, on exceptions. The action was brought to recover damages of the defendants for causing the death of Henry Ernst, deceased. The

cause was tried at the Rensselaer circuit, in May, 1859, before Mr. Justice GOULD and a jury. The judge declined to submit any question of fact to the jury and directed a non-suit, and ordered the plaintiff's exceptions to be heard in the first instance at the general term.

The following are the controlling facts:

For half a century there has been a public highway leading from Sand Lake to the city of Albany, passing through the village of Bath and over the Hudson river by what is known as the Bath ferry.

The defendants, as is admitted by the pleadings, operate the Troy and Greenbush railroad, which is located on the east bank of the Hudson, and crosses this public highway at Bath. The railroad crosses the highway upon the same level.

This company have a station house at Bath, located east of the railroad track and just north of the highway leading to the ferry, and ordinarily have a flagman stationed at the crossing.

When the accident happened the deceased resided in the eastern part of the county of Rensselaer, some 14 or 15 miles from Bath. His family consisted of a wife, (the plaintiff,) and six daughters.

On the 29th day of December, 1855, the deceased having a pair of horses attached to a sleigh, was passing upon this highway, bound for the city of Albany. On arriving at Bath he stopped at a tavern, about 158 feet east of the railroad track. As the ferry boat was ready to start, and was only waiting for him, the deceased unhitched his team, seated himself on the sleigh bottom, facing the west, and drove at a moderate pace directly towards the boat. Just as he approached the railroad crossing he came in collision with the defendants' train of cars moving south, receiving an injury that caused his death.

The plaintiff's testator was a teamster, and for more than twenty-five years used the road to Albany, crossing at

the Bath ferry, and very frequently crossed there. On the morning of the accident he went to Bath by the Sand Lake road, from which the cars were visible, if looked for, as far as the Nail Factory, some miles distant, and might be seen nearly all the way from there to the Bath crossing. He stopped at Dearstyne's tavern till the ferry boat was ready to start; he then came out, hurriedly, and drove towards the ferry-boat at a moderate pace—either a walk or a slow trot. He had a two-horse team and an empty sleigh. It was cold weather and he had a shawl about his face. He had no bells on his horses. In going from the tavern to the boat the road is nearly level, or a little ascending, for 158 feet, when it is crossed by the railroad track. For the whole of this distance, except in passing the station-house, a building twelve or 13 feet wide, there is no obstacle to seeing a train approaching from the north. The approach of a train can be heard, without bell or whistle, from one to two miles. The noise of that train had been heard by one Ostrander, some time before deceased left the tavern. When deceased was at the middle of Mineral street, 125 feet from the track, Ostrander, whom he had nearly run into, heard the noise of the coming cars, looked round, and saw them coming.

The cars were moving at the rate of from 30 to 40 miles an hour. Although in a situation to hear, no witness who was examined heard the bell or whistle before the collision. This omission on the part of the engineer in charge of the train attracted the attention of the ferryman at the time of the collision.

Miller, the regular flagman, was absent, and no flagman or other person was present to warn travelers of the approach of the train. The flagman is ordinarily there for the purpose of signaling the train when to stop for passengers.

Shortly before the collision, and as the deceased approached the track, some person on the ferry boat made

signals and motioned for deceased to come on. At the same time there was other hallooing in the street near the crossing. Other motions were made, one man motioned with his hand waving it towards the east. The bystanders understood the meaning of these signals differently; one thought it meant to keep off, another thought it meant to come on the boat, while others did not understand the meaning at all.

The approach of the train was perceived by several persons near the crossing; some saw it, some heard it. The witnesses did not observe whether the deceased looked up or down the railroad track as he approached the crossing, and it did not appear that he looked in either direction.

The appointment of the plaintiff as executrix of the last will and testament of her deceased husband, was shown in the case.

R. Parmenter, *for plaintiff.*
T. M. North, *for defendants.*

By the court—Hogeboom, Justice. In this case the judge non-suited the plaintiff. The non-suit was moved for on the ground that the negligence of the deceased contributed to produce the injury complained of. It does not appear whether it was granted upon that ground, or upon the ground that the defendants were not guilty of negligence, or both. As the judge refused to submit the case to the jury, it must appear that the evidence in favor of the defendants was so clear on one or the other of these grounds, that a verdict for the plaintiff would have been set aside as unwarranted by the evidence.

If the evidence established the fact that the bell of the engine was rung at the distance required by law, before reaching the crossing, I should incline to sustain the non-suit. The deceased could scarcely have failed to have discovered the approach of the train, if he had looked up the

track, as he had sufficient time and opportunity to do. There was nothing to obstruct his vision until he got very near the track. There was nothing done by the defend-ants to mislead or confuse him, unless it was the omission to ring the bell. He sat in the bottom of his sleigh. He was bundled up with a shawl or something else about his face, which very probably affected his hearing. He was not observed to look up or down the track, although he might have done so; he was probably intent upon reach-ing the ferry boat, which was about to start. The cross-ing was a much frequented one, with which he was familiar. He drove towards the ferry boat apparently unobservant of or inattentive to the approach of the train, which was both seen and heard by several other persons. These facts go very far towards establishing *prima facie* a want of care on his part, which should defeat the action.

And yet there are one or two circumstances in his favor entitled to consideration on the question of negligence, one I have already casually mentioned, to wit: defendants' omission to ring the bell, except at the moment of colli-sion. I think we must assume upon the present evidence that such was the fact. Persons who were in a situation to hear, and would probably have heard the bell if rung, testify to the fact that they did not hear it. This is, it is true, only negative evidence, and of little weight in com-parison with positive evidence to the contrary; but there is no such positive evidence, and I regard it as strong enough to overcome the legal presumption against a viola-tion of duty. This being so, it established a neglect of duty; negligence on the part of the defendants. And it may help to excuse the decedent from the imputation of negligence; for where a bell is required by law to be rung, the object of it is to notify and warn travellers of approach-ing danger, the traveller has, I think, a right to rely, to some extent at least, upon its being rung. The omission to ring it does not, of course, absolve him from the neces-

sity of other proper precautions. But if the jury should be satisfied, upon reasonable evidence, that the sound of the bell would have attracted the notice of the decedent, and enabled and caused him to avoid the danger, I am not prepared to say that there was such freedom from negligence on the part of the defendants, and such want of care on the part of the decedent, as defeats the action. And, under the evidence, I think this was a fair question for the jury, and that their verdict either way would not be disturbed.

There is another circumstance which appears to me not without some force in exculpating the decedent, if the jury took a particular view of the case. It is the signals or motions made to Ernst when driving towards the ferry boat. They were intended, doubtless, as warnings not to attempt to cross the railroad; but it is possible he may have understood them as invitations to hasten to the ferry boat, which was about to start across the river. And though it is scarcely probable that he put that construction upon them, I cannot say that a verdict establishing that fact would be without evidence to support it. If he did so understand the signals made to him, then they were calculated to induce him to do just what he did do, and might naturally disarm a prudent person of the suspicion of approaching danger from another quarter.

These considerations have induced me to favor a new trial. I give my entire assent to the proposition that non-suits in this class of cases, involving the question of negligence, are as proper as in any other, and I am quite aware that the sympathies of a jury are naturally inclined to those who suffer from these terrible accidents to such an extent as makes them sometimes forget the rules of law applicable to such questions. At the same time, the law has constituted them the chosen triers of disputed questions of fact, and such questions arise not only where there is a conflict of evidence as to what actually occurred,

but where there is a real and well-founded doubt as to the legitimate inferences to be drawn as to the existence of certain facts, from certain other facts clearly established by positive evidence. We must assume that in these, as in other cases, jurors will not be guilty of a violation of duty when they receive proper instructions from the court.

On the whole, though with some hesitation, I think the non-suit should be set aside, and a new trial granted with costs to abide the event.

PECKHAM, J., concurred.

GOULD, J., dissented.

## SUPREME COURT.

### JAMES McGRATH, administrator, &c. agt. THE HUDSON RIVER RAILROAD COMPANY.